IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SHADRIEKA BURNICE**                                                            **PLAINTIFF**

V.                                                          **NO. 3:20-CV-245-DMB-RP**

**CORECIVIC OF TENNESSEE, LLC**
d/b/a Tallahatchie County Correctional
Facility; and **CHRISTOPHER**
**WILLIAMS, Individually**                                        **DEFENDANTS**

## MEMORANDUM OPINION

Shadrieka Burnice sued her former employer and former supervisor alleging Title VII claims for sexual harassment, sex discrimination, and retaliation, and a state law claim for tortious interference with employment. After the defendants moved for summary judgment on all claims, Burnice conceded to the dismissal of her sexual harassment and sex discrimination claims. Because Burnice has not shown that her former supervisor's actions caused her termination, none of her remaining claims will proceed to trial.

## I
## Procedural History

On May 22, 2020, Shadrieka Burnice filed a complaint in the Circuit Court of Hinds County, Mississippi, against her former employer, CoreCivic of Tennessee, LLC, d/b/a Tallahatchie County Correctional Facility, and her former supervisor, Christopher Williams. Doc. #37. Burnice alleges violations of Title VII based on sex discrimination, sexual harassment, and retaliation, and a claim of tortious interference with employment. *Id.* at 4–6. Asserting federal question jurisdiction, the defendants removed the case to the United States District Court for the Southern District of Mississippi on June 30, 2020. Doc. #1. On the

parties' joint motion, the case was transferred to the Northern District of Mississippi on August 24, 2020. Doc. #11.

On August 23, 2021, the defendants moved for summary judgment on all of Burnice's claims. Doc. #50. The summary judgment motion is fully briefed. Docs. #51, #56, #60.

In anticipation of a potential trial, the parties filed various motions in limine to exclude certain evidence. Docs. #62, #70, #72, #74. Responses to the respective motions in limine were filed without reply. Docs. #76, #77, #81.

## II
## Summary Judgment Standard

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up).

### III
### Relevant Facts[1]

Burnice began her employment with CoreCivic in August 2018 as a correctional officer at the Tallahatchie County facility.[2] Doc. #55-1 at 1. In November 2018, she became a correctional counselor. *Id.*

### A. Initial Sexual Harassment Complaint

According to Burnice, starting in "late December or early January 2019, [she] began to be continually subjected to sexual harassment by … Williams, who was [her] immediate supervisor;" she began reporting this conduct to CoreCivic's Chief of Security Shalonda Dudley in March 2019; and "[w]hile Ms. Dudley would continually tell [her] that she would look into it, nothing appeared to ever be done about the situation." Doc. #55-1 at 1. Williams denies Burnice's sexual harassment allegations, Doc. #50-3 at 2, and Dudley denies that Burnice ever reported sexual harassment to her, Doc. #50-7.

On May 6, 2019, during a meeting at which Dudley was present, Burnice complained to Kamala Grant, the Assistant Warden, about Williams' conduct. Doc. #55-1 at 2; Doc. #50-1 at 130, 135. Burnice recounts that during the May 6 meeting Grant called Williams and told him to come to her office the next morning to discuss Burnice's allegations about his conduct with her and Burnice; the next day, Grant, Williams, and Burnice met in Grant's office; and "it was discussed that [Burnice] was making complaints regarding Mr. Williams, but the meeting had to end sooner than expected because Ms. Grant had to leave for an audit." *Id.* Grant does not

---

[1] The parties dispute many of the underlying facts. However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[W]hen deciding summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021) (internal quotation marks removed). Accordingly, many facts in this section present Burnice's version of the facts, noting the defendants' version where relevant to the issues in the motion.

[2] CoreCivic operates "correctional, detention and residential reentry facilities." Doc. #51 at 2.

acknowledge these two meetings, instead saying she met with Burnice on May 8, 2019, but that Burnice "did not complain to [her] about sexual harassment by Mr. Williams or anyone else at CoreCivic" at that meeting.³ Doc. #50-4 at 2.

### B. Detainee Meeting

Later in the afternoon of May 7, 2019, Burnice "had an issue with a detainee refusing to go back to [his] cell." Doc. #55-1 at 2; *see* Doc. #50-3 at 1. Burnice brought the detainee to Williams' office to discuss the issue. Doc. #55-1 at 2; *see* Doc. #50-3 at 1. As the detainee could not speak English well, Williams called Omaira Arvelo, the Chief of Unit Management, who "was on the phone [to] interpret[ ] for the detainee." Doc. #55-1 at 2; Doc. #50-3 at 1. The parties dispute what happened during the meeting.

According to Burnice, in response to the detainee informing Williams that he thought Burnice was going to assault him, Burnice said, "[t]his is some bullshit" and left the meeting. Doc. #55-1 at 2. Jessica Gross, another correctional counselor, was present when this statement was made. *Id.* After Burnice left Williams' office, Annie Bonner, a case manager, entered a few minutes later, and Burnice subsequently returned to the office with Gross. *Id.* at 2–3. Gross had a discussion with Williams⁴ but Burnice "made no comment to anyone during this second meeting." *Id.* at 3. The next day, Burnice "began hearing from co-workers that [she] had allegedly threatened to assault Chief Arvelo." *Id.*

Williams' declaration, however, states that when Burnice returned to his office, she told him he "was wrong for asking Chief Arvelo to translate for the detainee," contended that Arvelo sided with Puerto Rican detainees, and "stated that Chief Arvelo 'did not know shit about her'

---

³ According to Grant, during their May 8 meeting, Burnice told her that Williams made a statement that "Ms. Burnice got ass, ass." Doc. #50-4 at 2.

⁴ The discussion centered around documents found in inmate cells. Doc. #55-1 at 3.

4

and that she (Ms. Burnice) would 'slap the shit out of that bitch,' referring to Chief Arvelo." Doc. #50-3 at 2. Bonner was present at the time Burnice made these comments. *Id.* Williams reported Burnice's conduct to Grant the same day. *Id.* According to Williams, he "was not aware of [a sexual harassment complaint against him] when [he] reported Burnice's conduct." *Id.* Grant reported the allegation to Martin Frink, warden of the facility. Doc. #50-5 at 1.

"Based on the severity of the allegations and nature of the incident [at the detainee meeting], [Frink] asked Facility Investigator Billy Baker to open a formal investigation of the incident concerning Ms. Burnice's alleged conduct." Doc. #50-5 at 2.

### C. Investigation and Termination

As part of the investigation into Burnice's conduct, Baker interviewed Burnice, Lorenzo Thomas,[5] Bonner, Arvelo, Williams, Gross, and Christopher Phillips[6] and reviewed video footage. Doc. #50-2 at 2. During his investigation, "Baker informed [Frink] that … Phillips made statements … concerning alleged sexual harassment" by Williams toward Burnice.[7] Doc. #50-5 at 2. Based on this information, Frink also asked Baker to open a separate formal investigation into Williams' conduct. Doc. #50-5 at 2–3. During roughly the same time period, Burnice continued to complain to Grant about sexual harassment and ask her what was going to be done about the situation, eventually learning from Grant that the sexual harassment

---

[5] Thomas is a "Correctional Councilor" or "Correctional Officer." Doc. #50-2 at PageID 214.

[6] Baker refers to Phillips as an Assistant Shift Supervisor. Doc. #50-2 at PageID 210. Burnice refers to him as a lieutenant. Doc. #55-1 at 4.

[7] Although Fink's affidavit indicates Baker received this information directly from Phillips, Doc. #50-5 at 2, Baker's affidavit indicates he told Frink after Williams told Baker about statements made by Burnice to Phillips regarding Williams' conduct, Doc. #50-2 at 2.

5

allegations, as well as the workplace violence allegation, "had been turned over to … Baker."[8] Doc. #55-1 at 3–4.

"A few days or maybe a week" after Burnice learned Baker was handling the sexual harassment allegations, Phillips "approached [Burnice] and asked what was going on between" her and Williams. *Id.* Burnice "explained the ongoing sexual harassment by … Williams and that … Williams was making a workplace violence complaint against [her]." *Id.* Phillips, who was friends with Williams, offered to talk to Williams but Burnice told him it was not necessary. *Id.* In Phillips' "Incident Statement" contained in Baker's report on the threatening allegations and signed "May 21-24, 2019," Phillips states Burnice approached him and asked him to talk to Williams "to ask him to stop lying on her [regarding the incident with Arvelo] because if he continued to do so that she would be forced to report him." Doc. #50-2 at PageID 223.

On June 4, 2019, Burnice met with Baker to "dispute[] the workplace violence allegation … and provide[ her] statement regarding the sexual harassment." Doc. #55-1 at 5. Following his investigation into both matters, in his June 14 reports on each incident, Baker concluded that "the allegations against Ms. Burnice were credible" because Bonner "corroborated the allegations that Ms. Burnice called Chief Arvelo 'a bitch' and threatened to 'slap' Chief Arvelo'"[9] but "[n]o one corroborated Ms. Burnice's allegations against U/M Williams, and [Baker] did not find any corroborating evidence to support [the] allegations."[10] Doc. #50-2 at 2–3.

---

[8] Baker says Frink did not ask him to open the investigation into Burnice's conduct until May 28 and the investigation into Williams' conduct on May 29. Doc. #50-2. However, Burnice says she was told by Grant that Baker was handling her allegations on May 14, 2019. Doc. #55-1 at 4.

[9] *See* Doc. #50-2 at PageID 217.

[10] *See* Doc. #50-2 at PageID 246.

A "CoreCivic Facility Employee Problem Solving Notice" reflects that Burnice was terminated on July 1, 2019. Doc. #50-1 at PageID 207. The notice reflects it was initiated by Dudley and contains the following "Description of Incident":

> The investigation revealed that Correctional Counselor Shadrika Burnice called Chief of Unit Management Omaira Arvelo "a bitch" and threatened to "slap" Chief Arvelo. While Burnice admitted to being upset and using profanity, she denies threatening to "slap" Arvelo. This is a Violation of Core Civic Code of Ethics and Business Conduct and any supplements thereto. Acts of this nature cannot and will not be tolerated at this facility or by this company.

*Id.*[11]

## IV
## Analysis

The defendants argue summary judgment is proper on all claims because (1) Burnice cannot establish a prima facie case on her gender discrimination and retaliation claims but even if she could, "CoreCivic has provided legitimate, non-discriminatory reasons for terminating [her], and there is no evidence that CoreCivic's stated reasons are pretextual;" (2) the conduct Burnice complains about "do[es] not rise to the level of sexual harassment as a matter of law" and even if it did, "there is no competent evidence to prove causation between the alleged sexual harassment and her termination;" and (3) Burnice "does not have any evidence that Mr. Williams caused her termination, much less that he did so in bad faith," in support of her tortious interference with employment claim against him. Doc. #51 at 8–9.

> Both discrimination and retaliation claims under Title VII are subject to the *McDonnell Douglas* burden-shifting framework. For either type of claim, this framework requires the plaintiff to establish a prima facie case; the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action. If the employer provides such a reason, the burden shifts back to the plaintiff to show that the reason is a pretext.

---

[11] The notice is signed by Ernesto Ruiz Maldonado as the "Primary Approver Signature," "Release Approver Signature," and "Service Supervisor Signature;" and is signed by Rhonda Bush as the "Service Witness Signature." Doc. #50-1 at PageID 207. No party contends Maldonado or Bush had anything to do with the decision to terminate Burnice.

7

*Jones v. Gulf Coast Restaur. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021).

### A. Sex Discrimination and Sexual Harassment

In response to the motion for summary judgment, Burnice "concedes to the dismissal of her sex discrimination and sexual harassment claims." Doc. #56 at 18. Accordingly, the Court deems these claims abandoned. *Kovac v. Wray*, 363 F. Supp. 3d 721, 747–48 (N.D. Tex. 2019) ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived."). These abandoned claims will be dismissed and summary judgment on them denied as moot.

### B. Retaliation

Burnice alleges she was terminated from her employment at CoreCivic in retaliation for reporting Williams' conduct. Doc. #37 at 3, 5. The defendants argue Burnice's retaliation claim fails at both the prima facie stage and the pretext stage.

#### 1. Prima facie case

To establish a prima facie case of retaliation under Title VII, "a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017). "If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met her burden to establish a prima facie case of retaliation." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020).

The parties do not dispute that Burnice engaged in protected conduct by complaining about sexual harassment and that she suffered an adverse employment action when she was terminated. However, the defendants argue Burnice "cannot prove a causal connection [between

8

the protected conduct and her termination] because Mr. Williams did not know of any alleged sexual harassment complaint when he reported Plaintiff's conduct on May 7." Doc. #51 at 9. Burnice responds that "direct evidence is not required" and there are fact questions concerning whether Williams knew Burnice had complained about his conduct. Doc. #56 at 13–15.

The Court agrees with Burnice. While Williams states in his declaration that he did not know of Burnice's allegations when he reported her conduct, Burnice contends she met with Williams and Grant to discuss her complaints the morning before the detainee incident and Williams' report about her conduct.[12] Because there are fact questions regarding when Williams knew of Burnice's sexual harassment allegations, the Court assumes Burnice has established a prima facie case of discrimination. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004) (where the plaintiffs "may have raised a fact question as to the causal link," the Fifth Circuit "assume[d], *arguendo*, that they presented a prima facie case of retaliation" and decided the case on pretext). Therefore, the burden shifts to the defendants to provide a legitimate reason for Burnice's termination.

## 2. Legitimate reason

The defendants argue that "CoreCivic conducted a good faith investigation into [Burnice's] cursing and threatening Chief Arvelo," concluded Burnice "engaged in such conduct," and terminated her as a result of the conduct. Doc. #51 at 11. Burnice does not dispute that "CoreCivic has offered an alleged non-retaliatory reason for termination." Doc. #56 at 15. Thus, the burden shifts back to Burnice to establish that CoreCivic's reason was pretext. *Badgerow*, 974 F.3d at 619.

---

[12] Grant does not address Burnice's claim she met with her on May 6 in her affidavit, indicating only that she met with Burnice on May 8, the day after the detainee meeting which resulted in her termination. *See* Doc. #50-4.

9

3. Pretext

"At the pretext stage, the plaintiff must offer evidence that the adverse action would not have occurred but for her employer's retaliatory motive." *Id.* The Fifth Circuit "has held that a plaintiff's summary judgment proof must consist of more than a mere refutation of the employer's legitimate nondiscriminatory reason." *Jones*, 8 F.4th at 369 (affirming summary judgment for employer where employee's only evidence to contradict employer's non-discriminatory reason for termination was employee's declaration).

The defendants argue that Burnice cannot show "her employment would not have been terminated but for her protected conduct" because a good faith investigation into Burnice's "cursing and threatening … Arvelo" concluded that, based in part on Bonner's corroboration, Burnice had engaged in such conduct. Doc. #51 at 11. Burnice responds by attacking various aspects of Baker's report[13] and asserting that "Baker intentionally manipulated his report to make it appear that it was Mr. Williams and Ms. Bonner's story against just Ms. Burnice." Doc. #56 at 15–16. Specifically, although Burnice admitted to cursing during the detainee meeting, she claims that "she cursed in front of Mr. Williams on numerous occasions without reprimand prior to her complaint of sexual harassment" so she is "her own nearly identical comparator" and that "Williams … pursuing complaints of cursing when he allowed it in the past is … evidence [he] knew of the protected activity" when he made the complaint about her conduct. *Id.* at 16. In relation to Baker's report, she argues that even if Baker acted in good faith when rendering it, "there is clearly evidence to support a cat's paw theory of liability."

The defendants reply that because "it remains undisputed that Mr. Williams did not terminate" Burnice and she "did not produce any evidence of who at CoreCivic made the

---

[13] Burnice points to inconsistent testimony regarding when the investigation began, the "May 21-24, 2019" date used by Phillips on his statement, an alleged attempt by Williams to influence Bonner's statement, and various statements by Bonner. Doc. #56 at 5–10.

decision to terminate [her] employment," Burnice's discussion of Williams' behavior is unwarranted. Doc. #60 at 3. The defendants also argue that Burnice's attack on the underlying investigation is "legally insufficient" to survive summary judgment. Doc. #60 at 6.

Burnice's argument that she "is her own nearly identical comparator" because she "cursed in front of Mr. Williams on numerous occasions without reprimand prior to her complaint of sexual harassment"[14] fails. The summary judgment record reflects that Burnice was terminated not only for her use of profanity but also for her threat against Arvelo. Setting aside her use of profanity, Burnice has not identified a comparator who engaged in similar threatening conduct in the past without reprimand. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 580 (5th Cir. 2020) ("[A] plaintiff who proffers the treatment of a fellow employee must show that the plaintiff's termination was taken under nearly identical circumstances as those faced by the comparator.") (cleaned up). And to the extent Burnice attacks Baker's report and its conclusion, such is not a proper challenge to whether the report's conclusion was CoreCivic's reason for terminating Burnice. *See Dees v. United Rentals N. Am., Inc.*, 505 F. App'x 302, 306 (5th Cir. 2013) (relevant question was whether employee's managers considered his conduct a violation of policy, not whether the conduct actually violated the policy) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995), and *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)).

Because Burnice does not identify who made the decision to terminate her employment, the Court turns to her cat's paw argument. A cat's paw theory of liability is used when a plaintiff "cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with

---

[14] Doc. #56 at 16.

a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action." *Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015). To establish causation under this theory, a plaintiff must show that (1) her "supervisors, motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts where a but-for cause of" an adverse employment action. *Id.* at 333.

Burnice points to the close temporal proximity between her reporting sexual harassment by Williams and Williams' allegations against her to support that Williams' report was motivated by retaliatory animus. However, "[t]he temporal proximity between [the plaintiff's] protected activity and her termination is relevant to, but not alone sufficient to demonstrate, pretext." *Brown*, 969 F.3d at 578. Instead, the Court is required to "consider whether … other evidence, in combination with this temporal proximity, is sufficient for a reasonable jury to find but-for causation." *Id.* at 579.

The summary judgment record reflects that after Williams reported Burnice's conduct, Baker conducted an investigation and concluded the report of Burnice's conduct was substantiated. To the extent Burnice tries to establish pretext by pointing to an attempt by Williams to influence the investigation by encouraging Bonner to phrase her statement a certain way, her effort fails because the record undisputedly shows Baker knew of this attempt before reaching his findings in the investigation. Baker's notes from his interview with Bonner reflect that "Williams came to her and asked her to write a statement about what Burnice said;" Bonner "was uncomfortable in the way Williams asked her to write the statement" because he asked "as if she did not hear the statement and he wanted her to write the statement just as he was saying it;" and Bonner "heard Burnice say the words, she just did not like the way Williams asked her to write the statement." Doc. #50-2 at PageID 225. Even with this information, Baker found

Bonner's statements substantiated the allegations against Burnice. *Id.* at PageID 210, 213–17. Thus, Burnice cannot rely on Williams' attempt to influence the investigation to establish but-for causation.[15] *See Brown*, 969 F.3d at 580 (evidence that manager tried to interfere with investigation, though "deeply disturbing," did not prove but-for causation when the record showed that manager's attempts were unsuccessful).

There is no evidence Baker harbored any retaliatory animus. Based on the findings of Baker's investigation, CoreCivic terminated Burnice's employment. Because Burnice's termination was based on the findings of Baker's investigation, Burnice fails to show Williams' actions were a but-for cause of her termination and thus fails to show pretext. *See id.* (plaintiff failed to show employer's reason for termination was pretext where manager, who knew employee had made sexual harassment allegations against him, reported employee's unrelated conduct and investigation stemming from report recommended termination). Summary judgment on her retaliation claim is proper.

### C. Tortious Interference Claim

Burnice's tortious interference claim alleges that Williams acted maliciously in making a "false statement" regarding her conduct which led to her termination. Doc. #37 at 4, 5. The defendants argue Burnice's tortious interference with employment claim against Williams fails because she has "no evidence that Williams reported her misconduct in bad faith, and … no evidence that her employment would not have been terminated *but for* Williams' alleged

---

[15] Burnice relies on the affidavit of LaQuita Lewis to establish that Bonner "admitted she did not hear Ms. Burnice make any statements on May 7, 2019, and that she merely wrote what Christopher Williams told her to write." To the extent Burnice relies on this statement for its truth, it is inadmissible hearsay. *See Santos v. White*, 18 F.4th 472, 477 (5th Cir. 2021) ("A statement is hearsay if it is not made while testifying and a party offers it in evidence to prove the truth of the matter asserted in the statement."). To the extent Burnice seeks to call into question Bonner's credibility, such is an improper consideration at the summary judgment stage. *See Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) (at summary judgment stage, "the court should not weigh evidence or make credibility findings").

interference." Doc. #51 at 26. In response, Burnice asserts that there is evidence that Williams "was intentionally taking bad faith actions to cause [her] termination" because "Williams fraudently [sic] claimed that [she] threatened to slap Chief Arvelo, … instructed Ms. Bonner to falsely claim she witnessed it," and "intentionally did not disclose that Ms. Gross was present as well." Doc. #56 at 17–18. The defendants reply that Burnice's evidence on this is subjective and insufficient to overcome summary judgment. Doc. #60 at 8.

"Tortious interference with employment requires (1) intentional and willful acts (2) calculated to cause damage to a plaintiff in [her] lawful business (3) that were done with malice and (4) resulted in actual damage and loss." *Jones*, 8 F.4th at 369 (citing *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001)). "[S]upervisors acting within the scope of their responsibilities and in good faith cannot be held liable." *Id.* "Mississippi has recognized that a tortious interference with an employment claim can lie in the tortious interference of an at-will contract." *Morris v. Wal-Mart Stores, Inc.*, No. 1:14-CV-136, 2015 WL 5021659, at *2 (N.D. Miss. Aug. 24, 2015) (citing *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999)). "[T]he plaintiff must prove that the contract would have been performed but for the alleged interference." *Id.* (citing *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).

Because in addressing Burnice's retaliation claim, the Court concluded that Burnice could not show Williams' actions were a but-for cause of her termination, summary judgment on her tortious interference claim is also proper.

## V
## Motions in Limine

Since Burnice's abandoned claims will be dismissed and the Court has found summary judgment proper on her remaining claims, a trial in this case is not necessary. Accordingly, the parties' pending motions in limine will be denied as moot.

## VI
## Conclusion

Burnice's abandoned sex discrimination and sexual harassment claims are **DISMISSED with prejudice**. The defendants' motion for summary judgment [50] is **GRANTED in Part and DENIED in Part**. It is GRANTED with respect to Burnice's retaliation and tortious interference claims. It is DENIED as moot with respect to her abandoned claims. All pending motions in limine [62][70][72][74] are **DENIED as moot**. A final judgment will issue separately.

**SO ORDERED**, this 4th day of March, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**